UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X

RONNY RODRIGUEZ,

                Petitioner,

      -against-

CHRISTOPHER MILLER, Superintendent of
Great Meadow Correctional Facility,

            Respondent.

------------------------------------X

**MEMORANDUM AND ORDER**

18-cv-2015 (KAM)(LB)

**KIYO A. MATSUMOTO, United States District Judge:**

      *Pro se* petitioner Ronny Rodriguez ("Rodriguez" or "petitioner") brings the above-captioned petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is being held in state custody in violation of his federal constitutional rights. (ECF No. 1, Petition for a Writ of Habeas Corpus ("Pet.").) Petitioner's claims arise from a judgment of conviction following a bench trial in the Supreme Court of New York State, Queens County, on charges of robbery in the first degree, robbery in the second degree, and menacing in the second degree. (*Id.* at 1.) Petitioner was sentenced to five years in state prison for robbery in the first degree, three and a half years for robbery in the second decree, and one year for menacing, all to run concurrently, and to 5 years of post-release supervision. (*Id.*)

1

For the reasons stated below, the petition is denied.

**BACKGROUND**

I.  **Background Facts & Trial**

On the night of March 13, 2013, Aaron Ortiz ("Ortiz"
or "complainant") was returning from work to his home in Queens
when he stopped at a bodega to buy groceries.  (ECF No. 13-2,
State Court Bench Trial Transcripts ("Tr.") 44, 46-47.[1])  While
at the bodega, Ortiz saw petitioner, whom he had seen there
several times before.  (Tr. 48-49.)  Ortiz did not know
petitioner's name and never learned his name during the course
of those interactions.  (Tr. 40, 50.)

Petitioner asked Ortiz if he would lend petitioner
$380, but Ortiz responded that he could not lend petitioner the
money because he did not know petitioner well and did not have
that amount of money with him regardless.  (Tr. 55-57.)
Petitioner said he would give Ortiz a cell phone as collateral
in exchange for the money.  (*Id.*)  Ortiz agreed to the exchange,
and petitioner gave Ortiz a phone number to call when Ortiz was
ready to provide the money.  (*Id.* at 57.)  Ortiz dialed the
number and let the phone ring once before he left petitioner.
(*Id.*)

---

[1] Transcripts for the various trial proceedings (the pretrial *Rodriguez*
hearing, the bench trial, and the sentencing) were filed together as one
document.  The court will identify which proceeding it is citing and will
cite to the original transcript pagination for each proceeding, rather than
to the page numbers generated by the electronic filing system.

Less than 30 minutes later, after retrieving the money, Ortiz called the number petitioner gave him, but there was no answer and heard the voicemail message of someone called "Giovanni Rodriguez." (Tr. 58.) When Ortiz called a second time, petitioner answered and Ortiz told him that he had $300. (Tr. 59.) Petitioner and Ortiz agreed to meet at the bodega. (Tr. 59-60.) But a block and a half before Ortiz got to the bodega, petitioner stopped him in the middle of the block. (Tr. 60, 64-65.) Petitioner asked Ortiz if he had the money and Ortiz responded that he did. (Tr. 64-65.) Ortiz then asked petitioner if he had the phone. (Tr. 64-65.)

Ortiz testified that petitioner said he was not going to give Ortiz the phone, at which point someone approached Ortiz from behind and pressed something against his back. (Tr. 65-66.) Petitioner pulled out a gun, placed it to Ortiz's chest, and demanded the money. (Tr. 64-66.) Ortiz stated that he was "afraid" and "in shock" when the person appeared behind him and "terrified" when the petitioner pulled out a gun. (Tr. 65.) Petitioner took the $300 from Ortiz's hand and told Ortiz he would kill him if Ortiz called the police or told anyone. (Tr. 67.) The person behind Ortiz searched Ortiz's pockets and took the money that Ortiz had in them. (Tr. 66-67.)

Ortiz then went home and waited about twenty minutes before he called the police. (Tr. 67.) Ortiz told the police

3

he had been robbed. (Tr. 68.) Ortiz gave Detective Bruce Koch a description of the robber and reported the name he had heard on the voicemail message, "Giovanni Rodriguez." (Tr. 68, 108.) Ortiz also gave Detective Koch the phone number he was given by the robber. (Tr. 109, 181-82.)

During the trial, Detective Koch explained that he did not call the phone number Ortiz gave him, as he did not want to alert the robber to the police investigation. (Tr. 110.) Although he did not call the number, Detective Koch used it to conduct an investigation. (Tr. 114.) The trial judge did not permit Detective Koch to testify as to what the phone number was during his direct testimony. (Tr. 111.)

Petitioner testified that he called the police in January 2013 after he was locked out of the apartment he had been staying in. (Tr. 154.) Petitioner further testified that he called the police from a cell phone regarding that incident, but did not remember the phone number he called from. (Tr. 154-55.) He also claimed that he did not know whether he personally owned a cell phone in January 2013, when he called the police, or in March 2013, when the robbery occurred. (Tr. 157.)

When the people recalled Detective Koch as a rebuttal witness, he explained that he had asked the Realtime Crime Center to run the number Ortiz had received from the robber through a database to see whether the number was attached to any

other police department paperwork. (Tr. 182-83.) The database search led to a record of a 911 call placed by the petitioner, which was reflected in a sprint report (a police record that provides data on, among other things, 911 calls). (Tr. 183-85; *see also* ECF No. 13-1, State Court Record ("SR") 127-28.) A sprint report of a 911 call is created by the call operator, who transcribes what is being reported by the 911 caller. (*See* Tr. 186.) Based on the sprint report, the number given to Ortiz by the robber, which Ortiz reported to Detective Koch, was the same number petitioner used to call 911 in January 2013, and the sprint report listed petitioner's name. (Tr. 188.)

After reviewing the evidence, the court determined that the People had established the elements for convictions of first-degree robbery, second-degree robbery, and menacing (tr. 264) and that petitioner committed those crimes (tr. 264-65). On March 13, 2015, the court sentenced petitioner to five years in prison for the first-degree robbery conviction, three and a half years in prison for the second-degree robbery conviction, and one year in prison for the menacing conviction. (Tr. 357.) Petitioner was also sentenced to a five-year term of post-release supervision. (*Id.*)

II. **Procedural History**

Petitioner appealed his conviction to the New York Supreme Court, Appellate Division, Second Judicial Department

5

("Appellate Division"). In his appeal, petitioner argued that:
(1) the evidence was legally insufficient to convict and the
verdict was against the weight of the evidence (ECF No. 13-2, SR
at 23-29); (2) the court's admission of Detective Koch's
rebuttal testimony regarding petitioner's cell phone deprived
petitioner of a fair trial (*id.* at 29-35); (3) trial counsel was
ineffective for not objecting to admission of the 911 sprint
report or the prosecutor's reference to the sprint report during
his summation (*id.* at 36-41); and (4) the trial court improperly
interfered with defense counsel's summation (*id.* at 41-49).

On May 24, 2017, the Appellate Division unanimously
affirmed the trial court's decision. *People v. Rodriguez*, 150
A.D.3d 1154 (2d Dep't 2017); *see also* SR 118-19. The court held
that the verdict was not against the weight of the evidence and
the trial court was "justified in finding the defendant guilty
beyond a reasonable doubt." *Id.* at 1155. The court further
held that Detective Koch's testimony was admissible, and not
collateral, because it "corroborated the complainant's testimony
which [petitioner], during his own testimony, had refuted." *Id.*
The court rejected petitioner's ineffective trial counsel claims
"under either the Federal standard or the New York State
Constitutional standard, finding that counsel's performance did
not fall below an objective standard of reasonableness and that
counsel provided effective representation. *Id.* at 1156.

Lastly, the Appellate Division held that petitioner's claim that the trial court "deprived`him of his right to a fair trial and an effective summation [was] unpreserved for appellate review." *Id.* at 1156.

Petitioner sought leave to appeal to the New York Court of Appeals, but the Court of Appeals denied leave on July 28, 2017. *People v. Rodriguez*, 30 N.Y.3d 982 (2017); *see also* SR 123-26).

On April 3, 2018, petitioner filed a petition in this court seeking a writ of habeas corpus. (*See* ECF No. 1, Pet.) Petitioner raises the same four claims he raised on direct appeal to the Appellate Division. Petitioner again argues that: (1) the People failed to prove petitioner's guilt beyond a reasonable doubt, and the verdict was against the weight of the evidence; (2) the petitioner's due process rights were violated when the trial court allowed improper testimony and elicited inadmissible evidence in the trial over counsel's objections when Detective Koch testified; (3) petitioner received ineffective assistance of trial counsel, which deprived him of a fair trial and due process of law; and (4) there was improper interference by the trial court during defense counsel's summation. (Pet. at 4-6.)

DISCUSSION

I. **Legal Standard**

Under 28 U.S.C. § 2254, as amended by the
Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),
an application for a writ of habeas corpus by a person in
custody pursuant to a state court judgment may only be brought
on the grounds that his or her custody is "in violation of the
Constitution or laws or treaties of the United States."  28
U.S.C. § 2254(a).  A habeas petitioner is required to show that
the state court decision, having been adjudicated on the merits,
is either "contrary to, or involved an unreasonable application
of, clearly established Federal law" or was "based on an
unreasonable determination of the facts in light of the evidence
presented in the State court proceeding."  28 U.S.C. § 2254(d);
see also Johnson v. Williams, 568 U.S. 289 (2013).

For the purposes of federal habeas review, "clearly
established law" is defined as "the holdings, as opposed to the
dicta, of [the Supreme] Court's decisions as of the time of the
relevant state-court decision."  Williams v. Taylor, 529 U.S.
362, 412 (2000).  A state court decision is "contrary to," or an
"unreasonable application of," clearly established law if the
decision: (1) is contrary to Supreme Court precedent on a
question of law; (2) arrives at a conclusion different than that
reached by the Supreme Court on "materially indistinguishable"
facts; or (3) identifies the correct governing legal rule but
unreasonably applies it to the facts of the petitioner's case.

*Id.* at 412-13.  Factual determinations made by the state court are presumed to be correct, and a petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## II.  Sufficiency of the Evidence

Petitioner claims that the People failed to prove his guilt beyond a reasonable doubt during his trial because there was not sufficient evidence to support the verdict.  (Pet. at 4.)  He argues that Ortiz's testimony was insufficient to establish that Ortiz was robbed or that petitioner was the robber.  (ECF No. 1-2, Supplemental Memorandum of Law in Support Ronny Rodriguez's Petition for a Writ of Habeas Corpus ("Pet. Memo." at 2-5.)  Petitioner also argues that the trial court considered Ortiz's testimony implausible and did not sufficiently credit that testimony as more believable than petitioner's testimony.  (*Id.*)

For the reasons that follow, the court denies the petition with respect to the insufficiency of the evidence claim.  Sufficiency of the evidence claims "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012). First, "evidence is sufficient to support a conviction [on direct appeal] whenever, 'after viewing the evidence in the light most favorable to the

prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original)). Second, a "state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas unless the decision was objectively unreasonable." *Id.* (citation and internal quotation marks omitted). In reviewing a sufficiency of the evidence claim, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

Petitioner faced charges of robbery in the first degree, robbery in the second degree, and menacing in the second degree. (Tr. 37-37.) "A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he . . . [d]isplays what appears to be a pistol . . . or other firearm[.]" N.Y. Penal Law §160.15(4). "A person is guilty of robbery in the second degree when he forcibly steals property and when . . . [h]e is aided by another person actually present[.]" N.Y. Penal Law § 160.10(1). "A person is guilty of menacing in the second degree when . . . [h]e . . . intentionally places or attempts to place another person in reasonable fear of physical injury, serious physical injury or

death by displaying a deadly weapon, dangerous instrument or what appears to be a pistol . . . . [.]" N.Y. Penal Law § 120.14(1).

"A person forcibly steals property and commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of [] [p]reventing resistance to the taking of the property . . . or [] [c]ompelling the owner of such property . . . to deliver up the property." N.Y. Penal Law § 160.00. A deadly weapon is defined as "any loaded weapon from which a shot, readily capable of producing death or other serious physical injury, may be discharged[.]" N.Y. Penal Law § 10.00. A dangerous instrument is defined as "any instrument, article or substance . . . which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or other serious physical injury." *Id.*

Viewing the evidence in the light most favorable to the prosecution, as the court must, a rational trier of fact could have found (and did in fact find) that the essential elements of the crime were established beyond a reasonable doubt. Petitioner's conviction must, therefore, stand. Ortiz testified that petitioner, whom he recognized from seeing him several times before the date of the incident, asked for $380

and offered to give him a cell phone in exchange. (Tr. 8, 55-56.) Petitioner gave Ortiz a phone number he could call when he had the money. (Tr. 57.) Ortiz subsequently called petitioner at the number petitioner provided and told him that he had $300, which petitioner said was fine. (Tr. 59-60.) They agreed to meet at the bodega for the exchange. (Id.)

Ortiz testified that while en route to the bodega, he was stopped by petitioner, who asked whether complainant had the money and informed petitioner that he would not give Ortiz the phone in exchange. Ortiz further testified that someone approached him from behind and pressed an object into his back. Ortiz testified that petitioner pointed a gun at complainant's chest and touched him with the gun. He testified that he was terrified and "thought something was going to happen at that moment." (Tr. 60-65, 87-97.) Petitioner told Ortiz that if he said anything, petitioner would kill him. Petitioner took the $300 Ortiz had planned to loan and the person behind the Ortiz checked his pockets and took the additional money in there. (Tr. 66-67.) Ortiz reported the robbery to the police about 20 minutes after the robbery. (Tr. 67-68.) The phone number Ortiz was given by petitioner was given to the police, and the police ultimately tied that number to a 911 call made by the petitioner earlier in the year. (Tr. 182-83, 196.)

Considering the evidence presented, the trial court reasonably determined that the petitioner took Ortiz's money by force by demanding it and pointing a gun at him. (Tr. 262-63.) The trial court also credited Ortiz's testimony that there was a second person present during the robbery who pressed something against Ortiz's back while the petitioner displayed a weapon, which he touched to Ortiz's chest, and that Ortiz was scared. (Tr. 263-64.) These findings establish the elements for robbery in the first degree, robbery in the second degree, and menacing in the second degree.

Petitioner asserts that the court did not actually credit the complainant's testimony and that the court determined that there was a "fair fight" regarding the credibility of the testimony. (See Pet. Memo. at 5.) Petitioner further argues that if there was a dispute regarding the credibility of contradictory witness testimony, an inference should have been made in petitioner's favor. (Id.) But a habeas court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Wheel v. Robinson, 34 F.3d 60, 66 (2d Cir. 1994) (citing Jackson, 443 U.S. at 326). Here, the trial court did resolve any conflicts about the plausibility of the testimony. Despite

13

the court's comments regarding the wisdom of Ortiz's actions, the court also credited Ortiz's testimony and accepted that he felt comfortable enough with the petitioner to lend him money. (Tr. 264-65.)

Petitioner also argues that Ortiz's testimony was not sufficient evidence because it was not credible. (*See* Pet. Memo. at 3-4.) "Under 28 U.S.C. § 2254(e)(1), the fact-findings of the trial court are subject to a 'presumption of correctness,' a presumption that is particularly important when reviewing the trial court's assessment of witness credibility." *Cotto v. Herbert*, 331 F.3d 217, 233 (2d Cir. 2003) (citation omitted). "On habeas review, the petitioner has the burden of 'rebutting the presumption of correctness by clear and convincing evidence.'" *Id.* (citing 28 U.S.C. § 2254(e)(1)).

"Credibility determinations are properly within the province of the state court that presided over the trial . . . ." *Shabazz v. Artuz*, 336 F.3d 154, 163 (2d Cir. 2003). Although "[d]eference does not imply abandonment or abdication of judicial review [and] . . . does not by definition preclude relief," *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003), petitioner offers no clear and convincing evidence that rebuts the presumption of correctness owed to the trial court's witness credibility determination. Petitioner merely repeats the testimony presented at trial and disagrees with the judge's

conclusion on credibility. There is no basis in the record to conclude that the trial court's findings were objectively unreasonable.

Because a rational factfinder could have found the essential elements of the crime beyond a reasonable doubt based on the evidence in the record, deference is owed to the trial court's verdict. The petition is denied with respect to the insufficiency of the evidence claim.

## III.  **Weight of the Evidence**

Petitioner argues that the guilty verdict was "against the weight of the evidence." (Pet. at 4.) Petitioner combined his sufficiency and weight of the evidence claims into one claim (*see id.*) and makes the same arguments regarding Ortiz's testimony to support his claim that the weight of the evidence did not support the verdict (Pet. Memo. at 2-5). The court denies the petition with respect to the weight of the evidence claim.

"A 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles." *Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001). "In making a 'weight of the evidence' argument, Petitioner has not asserted a federal claim as required by 28 U.S.C. § 2254(a). Instead, he has raised an

error of state law, for which habeas review is not available."
*Garrett v. Perlman*, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006).
*See also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is
not the province of a federal habeas court to reexamine state-
court determinations on state-law questions."); *McKinnon v.
Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 75
(2d Cir. 2011) ("[T]he argument that a verdict is against the
weight of the evidence states a claim under state law, which is
not cognizable on habeas corpus[.]").

The court therefore denies the petition with respect
to the weight of the evidence claim.

IV. **Improper Testimony and Elicited Inadmissible Evidence**

Petitioner claims that his due process rights were
violated when the trial court allowed improper testimony and
inadmissible evidence over defense counsel's objection, which
violated petitioner's due process rights. (Pet. at 5.)
Petitioner objected at trial that Detective Koch should not have
been permitted to give rebuttal testimony regarding the phone
number used to call 911 because the People could have elicited
the phone number in their case in chief. (Tr. 179-80.)
Petitioner argued on appeal, and in his petition, that the
rebuttal testimony should not have been permitted because it did
not "counter a fact the defense had sought to prove" and was
hearsay. (SR 30; Pet. Memo. at 6-10.) The Appellate Division

16

concluded that the rebuttal testimony was admissible to refute petitioner's testimony and applied New York's contemporaneous objection rule, N.Y. Crim. Proc. L. § 470.05(2), to find the claim unpreserved because petitioner "did not present the same argument to the trial court that he presented on appeal." *Rodriguez*, 150 A.D.3d at 1155-56. The court denies the petition with respect to this claim.

"It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (citing *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). The independent and adequate state ground doctrine "applies equally to substantive and procedural state law grounds." *Friedgood v. Keane*, 51 F. Supp. 2d 327, 336 (E.D.N.Y. 1999) (citing *Coleman*, 501 U.S. at 729-30). "A state procedural bar arises . . . through a failure to preserve a claim of appeal through contemporaneous objection." *Bacchi v. Senkowski*, 884 F. Supp. 724, 731 (E.D.N.Y. 1995), *aff'd,* 101 F.3d 683 (2d Cir. 1996).

To be independent, "the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case." *Harris v. Reed*, 489 U.S. 255, 261-62 (1989). The "Appellate Division's express reliance on the

state's contemporaneous objection rule . . . constitutes an 'independent' state law ground . . . ." *Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011).

A "state law ground is only adequate to support the judgment and foreclose review of a federal claim if it is 'firmly established and regularly followed' in the state." *Garvey v. Duncan*, 485 F.3d 709, 713 (2d Cir. 2007) (citing *Lee v. Kemna*, 534 U.S. 362, 375 (2002)). "[T]he contemporaneous objection rule[, N.Y. Crim. Proc. L. § 470.05(2),] is a firmly established and regularly followed New York procedural rule." *Downs v. Lape*, 657 F.3d 97, 104 (2d Cir. 2011).

A federal court reviewing a habeas claim cannot review a procedurally barred claim on the merits unless the petitioner can show "cause for the default and actual prejudice because of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). *See also Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) ("[T]he petitioner must show cause for the default and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent).").

"[E]xistence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some

objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). "[A] showing that the factual or legal basis for a claim was not reasonably available to counsel" would suffice as an objective impediment. *Id.* "To show prejudice, a petitioner must demonstrate that the failure to raise the claim previously had a substantial injurious effect on the petitioner's case such that he was denied fundamental fairness." *Torres v. Racette*, No. 11-CV-1647 (PKC), 2018 WL 4762246, at *3 (E.D.N.Y. Oct. 2, 2018).

The Appellate Division determined that the rebuttal testimony was admissible to impeach petitioner and, more importantly, that the petitioner's objection to the rebuttal testimony was not preserved in accordance with N.Y. Crim. Proc. R. 470.05. *Rodriguez*, 150 A.D.3d at 1155-56. Petitioner's claim does not qualify for the exception to the procedural default rule. Petitioner does not show cause for the default, arguing instead that he did not actually default because he preserved the claim. There is no evidence in the trial transcript to support petitioner's argument that he objected specifically over the same issue he raised on appeal.

The claim petitioner raised before the Appellate Division was that the evidence proffered by Detective Koch did not "contradict or disprove any fact that the defense had sought

to prove." (SR 30-31.) During the trial, petitioner's counsel stated only that the People did not provide information regarding the phone number during their direct case, but did not argue that the information failed to meet the standard of contradicting or disproving any fact the defense sought to prove. (Tr. 179-80.) Pursuant to New York Criminal Procedural Law § 470.05(2), petitioner's claims are unpreserved because there was no objection during the trial based on this argument.

Moreover, there was no prejudice affecting the fundamental fairness of the trial, as Detective Koch's testimony regarding the sprint report supported other existing evidence already in the record from complainant Ortiz's testimony. Petitioner does not make a showing of factual innocence in his petition and has not demonstrated that the procedural default would result in a fundamental miscarriage of justice.

The court, therefore, is precluded from reaching the merits of petitioner's due process claims based on Detective Koch's testimony and denies the petition on this ground.

## V. **Ineffective Assistance of Trial Counsel**

Petitioner claims that his trial counsel was ineffective, which deprived him of a fair trial and due process of law. (Pet. at 6-7.) Petitioner argued on direct appeal, and in his petition, that his counsel was ineffective when he stipulated to admission of the 911 sprint report and failed to

object to the prosecutor's closing argument that the report was circumstantial evidence of guilt. (SR 36-37; Pet. Memo. at 10-14.) The Appellate Division found that petitioner was not deprived of effective counsel under either the federal standard or the New York state constitutional standard because counsel's performance did not fall below an objective standard of reasonableness. *Rodriguez*, 150 A.D.3d at 1156. This court agrees and denies the petition's ineffective assistance of counsel claim.

To establish a claim of ineffective assistance of counsel, a petitioner must meet the two-prong test outlined in *Strickland v. Washington*, 466 U.S. 668, 691 (1984). A petitioner must show that: (1) counsel's performance was deficient, meaning that it "fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. The two prongs may be addressed in either order. *Id.* at 697. A court assessing an ineffective assistance claim is not required "to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.*

Under the first prong regarding counsel's performance, "reasonableness" is determined by what the court views as "prevailing professional norms." *Strickland* at 688. "[T]he

21

standard for judging counsel's representation is a most deferential one." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). A petitioner must identify the "acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. It is "strongly presumed" that counsel rendered adequate assistance and exercised reasonable professional judgment. *Id.*

Under the second prong, prejudice, a "reasonable probability" of a different outcome absent counsel's performance is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury," *id.* at 695, and petitioner must "affirmatively prove prejudice arising from counsel's allegedly deficient representation," *Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir. 2008) (citations and internal quotation marks omitted).

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and by § 2254(d) are both highly deferential." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

Petitioner is unable to show that counsel's stipulation to the admission of the sprint report is evidence of

ineffective assistance of trial counsel. The trial court stated

that the People would need to produce a custodian of the

document, who could testify as to how the document was created.

(Tr. 188.) However, the judge said he would allow the People as

much time as needed to produce this person. (*Id.*) There is

nothing in the record to discredit the assumption that

petitioner's counsel exercised reasonable professional judgment

when stipulating to the admission of the sprint report, as the

trial court had allowed indefinite time for the People to

produce a custodian and the People would have been able to

produce a custodian who could testify about the link between the

petitioner and the phone number on the sprint report. (Tr. 193-

95.) The court's admission of the report into evidence,

including after defense counsel's *voir dire* of Detective Koch

regarding the report and the stipulation to admit (tr. 185-88),

did not render deficient or objectively unreasonable defense

counsel's decision to refrain from objecting to references to

the report as circumstantial evidence during the People's

summation.

     Furthermore, petitioner does not satisfy the second

prong of *Strickland*, which requires showing "there is a

reasonable probability, that but for counsel's unprofessional

errors, the result of the proceeding would have been different."

*Strickland*, 466 U.S. at 690. Absent the stipulation, the trial

court would have allowed the People time to produce the document

custodian.  And absent the stipulation, the court still had

complainant Ortiz's credited testimony to rely on as a basis for

its decision.

Throughout the representation, counsel provided

effective representation to petitioner.  During the pre-trial

*Sandoval* hearing, counsel successfully obtained a ruling

precluding the People from discussing the petitioner's criminal

history unless the petitioner raised the issue first.  (Tr. 12,

123.)  During the trial, counsel raised objections, which were

sustained, at appropriate times.  (*See, e.g.*, Tr. 47-48, 54, 56,

61-63, 109, 111, 146, 148, 159, 176-77, 182-83, 188-89, 200,

202.)

During cross examination, counsel impeached Ortiz

regarding the identity of Ortiz's employer based on his grand

jury testimony.  (Tr. 73.)  Counsel elicited an admission from

Ortiz that Ortiz did not recall the exact sequence of actions

that the petitioner, the accomplice, and he took during the

robbery.  (Tr. 88-90.)  Counsel questioned whether Ortiz had a

motivation to lie about the robbery, suggesting that Ortiz may

have been trying to obtain lawful status through a U-Visa by

reporting a crime.  (Tr. 75-76.)  The trial court subsequently

took judicial notice of the U-Visa statute at petitioner's

counsel's request.  (Tr. 218.)  On re-cross-examination,

petitioner's counsel also elicited an admission from Ortiz that Ortiz was not sure of the exact amount of money taken from his pocket during the robbery, despite having testified before the grand jury that the amount was fifty dollars. (Tr. 97-98.)

Counsel delivered a defense theory for his case in his summation. (Tr. 222-41.) Counsel's effective representation continued even after the verdict was rendered; counsel successfully convinced the court to sentence petitioner to five years of incarceration, less than the seven years the People argued for. (Sentencing Tr. 3-4.)

Petitioner's counsel provided effective assistance of counsel throughout his tenure as petitioner's counsel. The court denies the petition on the ineffective assistance of counsel claim.

VI. **Judicial Interference Claim is Procedurally Defaulted**

Petitioner claims that the trial court inappropriately interrupted defense counsel's summation by asking questions and, therefore, interfered with petitioner's right to a fair trial. (Pet. Memo. at 14-20.) The court denies the petition on this ground.

Petitioner's judicial interference claim is procedurally barred because it as unpreserved for appellate review. Under 28 U.S.C. § 2254, courts do not need to consider the merits of any claim that is procedurally defaulted.

*Harrington v. Richter*, 562 U.S. 86 at 103. "A federal claimant's procedural default precludes federal habeas review if the last state court rendering judgment in the case rests its judgment on the procedural default." *Harris v. Reed*, 489 U.S. 255, 262 (1989).

Here, the Appellate Division found unpreserved for appellate review petitioner's claim that the trial court deprived him of his right to a fair trial and an effective summation. *Rodriguez*, 150 A.D.3d at 1156. Petitioner's claims do not meet the exception to the procedural default rule, as discussed above.

Regardless, petitioner's claim would fail on the merits. Petitioner cannot establish that the state court rendered a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, which is defined as "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). The Supreme Court has held that "there can be no justification . . . that empowers a trial judge to *deny absolutely* the opportunity for any closing summation at all." *Herring v. New York*, 422 U.S. 853, 863 (1975) (emphasis added). But the Supreme Court in *Herring* also rejected the premise that "closing arguments in a criminal case must be uncontrolled or

even unrestrained" and affirmed that "[t]he presiding judge must be and is given great latitude in controlling the duration and limiting the scope of closing summations." *Id.* at 862.

The trial court's probing during closing argument during the bench trial was not an absolute denial of the opportunity for closing summation. Moreover, clearly established federal law, as established by the Supreme Court does not bar a judge's questioning of counsel during closing arguments. The trial court's questioning served the purpose of ensuring that the "closing argument for the defense[,] . . . a basic element of the adversary factfinding process in a criminal trial," *Herring*, 422 U.S. at 858, provided the court with the information it needed to determine whether the government had met its burden of proof.

The petition is denied with respect to the judicial interference claim.

## CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied in its entirety. Because petitioner has not made a substantial showing of the denial of any constitutional right, no certificate of appealability will issue. *See* 28 U.S.C. § 2253(c)(2); *see also Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 112-13 (2d Cir. 2000). The court certifies

27

pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is respectfully directed to enter judgment, send petitioner a copy of this Memorandum and Order and the judgment, note service on the docket, and close the case.

Dated:    May 30, 2019
          Brooklyn, New York

                                        /s/
                              _____
                              **HON. KIYO A. MATSUMOTO**
                              United States District Judge
                              Eastern District of New York